OLDHAM & WORTH, INC. v. JOHN BRATTON, JR., AND WIFE, MICHELLE T. BRATTON, AND JOHN M. CANNON.

(Filed 15 January, 1965.)

**1. Appeal and Error § 22—**

An appeal from a judgment of nonsuit, entered without specific findings of fact in a trial by the court under agreement of the parties, presents the question whether the evidence, taken in the light most favorable to plaintiff, will support findings of fact upon which plaintiff could recover.

**2. Master and Servant § 3—**

An agreement under which a contractor obligates himself to construct a residence on a cost plus basis in accordance with plans and specifications, leaving to the contractor decision as to where materials should be purchased, who should be employed as workmen, and to what extent, if any, the contractor would subcontract the work, the owner being concerned only with the final result, creates the relation of owner and independent contractor.

**3. Contracts § 14—**

Where a contractor for the construction of a house is an independent contractor, the person furnishing materials solely on the basis of the contractor's credit may not hold the owner liable on the theory that the contractor was an agent for the owner in purchasing the materials.

**4. Laborers' and Materialmen's Liens § 3—**

Where the owner receives no notice of amounts due a material furnisher but pays the contractor upon monthly applications for reimbursement for labor and materials, with the material furnisher's invoices attached, with nothing to indicate that the contractor had not paid the materialman for the items listed thereon, the owner is not liable to the material furnisher under the provisions of G.S. 44-8.

**5. Same—**

Where the contract is terminated solely for financial inability of the contractor to complete performance, provisions of the contract referring to the owner's right to terminate the contract and the rights and obligations of the owner in the event of such termination, are inapplicable.

**6. Appeal and Error § 41—**

Where decision as to nonsuit is not based in whole or in part on evidence admitted over plaintiff's objection, the admission of such evidence cannot be prejudicial to plaintiff.

**7. Trial § 56—**

The rules of evidence are not so strictly enforced where jury trial is waived.

**8. Judgments § 7—**

A tender of judgment which is not made until after nonsuit has been entered and plaintiff has appealed therefrom and the session of court has expired, does not comply with G. S. 1-541.

**9. Husband and Wife § 3—**

Where the wife does not sign the contract for the construction of a residence and there is no evidence that the husband was her agent in signing the contract, or that she had any dealings in regard thereto, the wife is not a party to the agreement and she is not liable thereon.

**10. Laborers' and Materialmen's Liens § 3—**

The owner may be held liable for material furnished after the owner had agreed with the material furnisher to pay for same.

APPEAL by plaintiff from *Hobgood, J.,* First Regular April 1964 Civil Session of WAKE.

Action to recover $1,774.90 for materials furnished by plaintiff and used in the construction of a residence on Lakeview Drive, Raleigh, N. C., owned by defendants Bratton.

The materials were furnished by plaintiff on order of defendant Cannon and used by Cannon in part performance of a written contract dated July 24, 1961. While the contract recites it is between Cannon (Contractor) and "Mr. and Mrs. John Bratton, Jr." (Owner), it was not signed by defendant Michelle T. Bratton (Mrs. John Bratton, Jr.). Unless otherwise stated, "Bratton" refers to defendant John Bratton, Jr.

The two documents constituting the contract are on printed forms issued by The American Institute of Architects. One is entitled "A FORM OF AGREEMENT BETWEEN CONTRACTOR AND OWNER . . . for use when the cost of the work plus a fee forms the basis of payment," referred to hereafter as the Contract. It incorporates by reference a separate document entitled, "THE GENERAL CONDITIONS OF THE CONTRACT FOR THE CONSTRUCTION OF BUILDINGS." (Note: In the portions quoted below, the italicized words and figures are typed, all others are printed.) The Contract designates Holloway-Reeves and Associates, Raleigh, N. C., as Architect.

The Contract, by reference, identifies the original "Drawings" and "Specifications" and modifications thereof. In Article 1 of the Contract, "(t)he contractor agrees to provide all the labor and materials and to

do all things necessary for the proper construction and completion of the work shown and described" on said Drawings and in said Specifications.

Article 4 of the Contract, entitled "Fee for Services," provides: "In consideration of the performance of the contract, the Owner agrees to pay the Contractor, in current funds as compensation for his services hereunder *Four Thousand Dollars ($4,000.00)* which shall be paid as follows: *At the completion and acceptance of the work hereunder."*

Article 5 of the Contract, entitled "Costs to be Reimbursed," in part, provides: "The Owner agrees to reimburse the Contractor in current funds all costs necessarily incurred for the proper execution of the work and paid directly by the Contractor, such costs to include the following items, . . . (a) All labor directly on the Contractor's pay roll . . . (i) Materials, supplies, equipment and transportation required for the proper execution of the work . . . *(x) The total costs to be reimbursed as described in Article 5 shall not exceed $69,614.76."*

Article 12 of the Contract, entitled "Applications for Payment," in part, provides: "The Contractor shall, between the first and seventh of each month, deliver to the Architect a statement, sworn to if required, showing in detail and as completely as possible all moneys paid out by him on account of the cost of the work during the previous month for which he is to be reimbursed under Article 5 hereof, with original pay rolls for labor, checked and approved by a person satisfactory to the Architect, and all receipted bills."

Cannon began construction the last of July, 1961. In January, 1962, Cannon ceased construction and notified Bratton he could not complete the job. Thereafter, the residence was completed pursuant to a contract between Bratton and a different contractor.

The Architect, pursuant to Article 5, submitted five documents to Bratton, each entitled "Certificate for Payment," dated and for amounts as follows: (1) September 12, 1961, $2,052.52; (2) October 9, 1961, $3,852.22; (3) November 9, 1961, $6,622.29; (4) December 11, 1961, $5,038.52; and (5) January 19, 1962, $1,005.77 ($541.00 to be paid directly to M. R. Peebles, masonry contractor, and $464.77 to be paid to Cannon). Each certificate bears this (printed) provision: "Provided that neither the Owner nor any agent of the Owner has received any notice of any sort from any source indicating that the Contractor has failed to pay any sub-contractor, laborer, or materialman, the following amount is authorized for immediate payment." Bratton paid to Cannon the full amount called for by each of the first four certificates. In accordance with the (last) certificate dated January 19, 1962, Bratton paid $464.77 to Cannon and $541.00 to Peebles. Hence, Brat-

ton paid to Cannon a total of $18,030.32. He paid another contractor $58,850.00 to complete the job.

The amount of each "Certificate for. Payment" is the aggregate of items of labor and materials shown on a list (attached to the certificate) submitted by Cannon to the Architect. Each such attached list, except that attached to the (last) certificate of January 19, 1962, includes numbered invoices for materials purchased by Cannon from plaintiff. The list attached to the certificate of January 19, 1962, covers only items for labor performed in January, 1962.

Plaintiff alleged "the terms" of the Contract of July 24, 1961, "made the defendant Cannon the agent of the defendants Bratton for the construction of said residence," and that the purchases by Cannon from plaintiff were made "in the course of said agency and employment" by defendants Bratton. Plaintiff also alleged defendants Bratton, "in violation of the requirements of G.S. 44-8," failed and neglected to pay any sums whatsoever directly to plaintiff for materials it had furnished as shown on statements submitted by Cannon to the Architect.

A motion by defendants Bratton that plaintiff be required to make an election as to the theory on which it contended defendants Bratton were liable was heard at October 1962 Special Term. McConnell, J., ruled that plaintiff had asserted two inconsistent theories of liability and was required to elect. Plaintiff excepted to the ruling requiring such election; but, in compliance therewith, plaintiff elected to proceed on the theory that plaintiff's cause of action against defendants Bratton was "for breach of a direct contract between them."

An order was entered permitting defendants Bratton to amend (supplement) their answer by adding thereto a "First Further Answer and Affirmative Defense." Plaintiff excepted. When defendants Bratton filed said further answer and defense, plaintiff demurred thereto orally. The court overruled plaintiff's said demurrer and plaintiff excepted.

When the case was called for trial, a jury trial was waived. At the conclusion of plaintiff's evidence, the court allowed the motion of defendants Bratton for judgment of nonsuit.

The judgment entered (dated April 16, 1964) concludes as follows:

"NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the plaintiff be, and it is hereby nonsuited as to the defendants John Bratton, Jr. and wife Michelle T. Bratton and that the said cause be and it is hereby dismissed as to them.

"The defendant John M. Cannon having then stated that he did not desire to offer any evidence and that he personally had incurred the obligations to plaintiff in the amount sued for by plaintiff, the court advised plaintiff's counsel that it was prepared to enter judgment for

plaintiff against the defendant Cannon. Thereupon, plaintiff stated that consistent with its theory of the case that the defendant Cannon acted only as the agent of the defendants Bratton it desired to take a voluntary nonsuit as to the defendant Cannon.

"NOW, THEREFORE, the plaintiff having submitted to voluntary nonsuit as to the defendant Cannon, IT IS ORDERED, ADJUDGED and DECREED that the plaintiff be nonsuited as to the defendant Cannon.

"The costs of this action shall be taxed to the plaintiff."

Plaintiff excepted and appealed. "Appeal Entries" are dated April 16, 1964.

Thereafter, "Tender of Judgment" dated April 27, 1964, and served on plaintiff's counsel and filed April 28, 1964, is in words and figures as follows: "Pursuant to the provisions of G.S. 1-541 the defendants John Bratton, Jr. and wife Michelle T. Bratton hereby offer in writing to the plaintiff to allow judgment to be taken against them in the sum of $72.16 with interest from January 17, 1962, together with the costs of this action as taxed by the clerk." Plaintiff made no response thereto.

*Vaughan S. Winborne for plaintiff appellant.*
*Joyner & Howison for defendant appellees Bratton.*

BOBBITT, J.  Where, upon waiver of jury trial in accordance with G.S. 1-184, the court makes no specific findings of fact but enters a judgment of involuntary nonsuit, the only question presented is whether the evidence, taken in the light most favorable to plaintiff, would support findings of fact upon which plaintiff could recover. *Shearin v. Lloyd*, 246 N.C. 363, 98 S.E. 2d 508, and cases cited; *DeBruhl v. Harvey & Son Co.*, 250 N.C. 161, 167, 108 S.E. 2d 469.

Since the evidence was fully developed, whether there was error in the order relating to an election is immaterial if the evidence, when considered in the light most favorable to plaintiff, is insufficient to support a recovery on any theory.

The total of $1,774.90 plaintiff seeks to recover consists of (1) $1,702.74 for materials sold prior to January 1, 1962, and (2) the $72.16 for materials sold during January 1962 for which defendants Bratton tendered judgment. There was evidence plaintiff has not received payment of any part of said $1,774.90 from any source.

Plaintiff's invoices for materials sold and delivered prior to January 1, 1962, were made out to J. M. Cannon, "(f)or use on the Bratton Job," and plaintiff's ledger sheet (Exhibit #1) shows the items covered

by said invoices (a total of $1,702.74) were charged to J. M. Cannon in connection with the "Bratton Job—Lakeview Dr."

Plaintiff contends Cannon purchased the materials ($1,702.74) as agent for defendants Bratton. All the evidence is to the effect that these materials were sold and charged by plaintiff to Cannon on the basis of credit extended by plaintiff to Cannon.

Plaintiff's (then) Vice President, George W. Worth, who acted for plaintiff in its dealings with Cannon with reference to materials furnished for Cannon's use on the Bratton job, testified: "Mr. Cannon had purchased over a great many years a great quantity of materials from Oldham & Worth and during those years Oldham & Worth had constantly extended credit to him." Referring specifically to the Bratton residence, Worth testified: "My firm sold him (Cannon) materials for the construction of that house . . ." Referring to the items (a total of $1,702.74) shown on Exhibit #1, Worth testified: "Oldham & Worth intended to make each one of the sales to Mr. Cannon. I had no dealings with anybody else in connection with those sales. I sent statements for the amount of those sales to J. M. Cannon. . . . At no time between August 3, 1961 (the date of the first entry on Exhibit #1), through December 31, 1961, did I make any claim whatsoever upon Mr. John Bratton, Jr., or his wife Michelle T. Bratton for any of" said items.

Worth testified: "It was only after Mr. Cannon got in financial difficulties and called a meeting of his creditors early in 1962 that I made any effort to bill materials to Mr. and Mrs. Bratton." Again: "At the time of the creditors' meeting I did not know the terms of the contract between Mr. Cannon and the Brattons." (Note: Bratton testified said (first) meeting of Cannon's creditors was held January 11, 1962.)

During the period from August 3, 1961, through December 31, 1961, plaintiff was selling Cannon materials for use on other jobs. Worth testified: "I was looking to him for payment of those materials, just as I was for payment for the materials on this job." Payments were made by Cannon to plaintiff during said period. Cannon did not direct the application thereof. Plaintiff credited them "to the oldest account."

Bratton wanted the construction on his residence to go forward. According to Worth, Bratton agreed to pay for three items, a total of $72.16, for materials delivered in January, 1962. These three items were invoiced and charged to defendants Bratton and appear on Exhibit #2 (ledger sheet). According to Worth, one item ($12.36) was for material delivered January 3, 1962, and two items (a total of $59.80) were for material delivered January 17, 1962.

At said first meeting of Cannon's creditors, one of the terms of a proposed agreement was "that the owners of the two projects would pay Mr. Cannon's payroll and would also pay the brick mason's payroll." (Note: The certificate of payment dated January 19, 1962, is for January labor.) Later in January, after a second meeting of Cannon's creditors, "everything came to a dead halt."

The extensive provisions of the contract of July 24, 1961, which define the status of the Contractor, the Owner and the Architect, did not make Cannon the agent of defendants Bratton for the construction of the Bratton residence. On the contrary, these provisions clearly identify and establish Cannon's status as that of independent contractor. Legal principles distinguishing an independent contractor from an agent are set forth in many of our decisions. *Hayes v. Elon College,* 224 N.C. 11, 29 S.E. 2d 137, and cases cited; *Cooper v. Publishing Co.,* 258 N.C. 578, 129 S.E. 2d 107, and cases cited; *Richards v. Nationwide Homes, ante,* 295, 139 S.E. 2d 645, and cases cited. Reference is made to *Pumps, Inc. v. Woolworth Co.,* 220 N.C. 499, 17 S.E. 2d 639, for application of these legal principles in a similar factual situation. Restatement of these well-settled legal principles is unnecessary.

Cannon was engaged in an independent business or occupation. He was a general contractor of long experience. His contractual obligation was to construct the Bratton residence in accordance with the Drawings and Specifications. Where he would purchase materials, whom he would employ as workmen, and to what extent, if any, he would sub-contract the job, were for decision by Cannon. Bratton was concerned only with the final result, namely, the construction and completion of the residence in accordance with the Drawings and Specifications. It is noted that this was Bratton's first experience in connection with the construction of a residence.

It seems appropriate to consider plaintiff's alternative contention, namely, that defendants Bratton are liable to him on account of payments made by Bratton to Cannon as authorized by the Architect's said certificates without first determining Cannon had made actual payment of the items he listed on the statements he submitted to the Architect.

Under G.S. 44-8, it was Cannon's duty before he received payment from Bratton to show the amount, if any, he then owed plaintiff for materials used on the Bratton job. He did not do so.

As a basis for progress payments, Cannon, under Article 12 of the Contract, was required to submit statements to the Architect covering "all moneys *paid out by him* on account of the cost of the work during the previous month for which he (was) to be reimbursed under Article

5." (Our italics). The Architect accepted Cannon's statements as correct in respect of the work he had done. As indicated, each certificate of the Architect authorized payment "(p)rovided that neither the Owner nor any agent of the Owner has received any notice of any sort from any source indicating that the Contractor has failed to pay any subcontractor, laborer, or materialman." Bratton had no knowledge or notice that plaintiff had not been paid for materials Cannon had purchased from plaintiff and covered by numbered invoices listed on the statements submitted by Cannon to the Architect.

Until said meeting of Cannon's creditors on January 11, 1962, Bratton had no notice that Cannon was indebted to plaintiff for materials it had sold and delivered to him for use on the Bratton job. Worth testified: "As to my not making any effort to collect any monies from Mr. Bratton until after the first of 1962, I expect that if I had said to Mr. Cannon anything about whether he was getting payments on Mr. Bratton's bill he would have cut me off immediately as a customer. As to why I didn't do it, nobody does it."

No notice was given by plaintiff to Bratton. See G.S. 44-9. Plaintiff relies on G.S. 44-8. The question is whether Bratton became liable for amounts due by Cannon to plaintiff because he made payments to Cannon without first ascertaining that the items listed on Cannon's statements to the Architect as a basis for progress payments had not in fact been paid. The answer is, "No."

G.S. 44-8, in substance, is a codification of Section 1, Chapter 67, Laws of 1887. Its legal significance, in a factual situation similar to that now under consideration, was settled in *Pinkston v. Young,* 104 N.C. 102, 10 S.E. 133 (1889).

In *Pinkston v. Young, supra,* the action was to enforce a lien against the property of defendant for the amount owing on account of materials sold and delivered by plaintiffs to a contractor (Linthicum) for use and used in constructing a house for defendant. Defendant had paid the contractor. The contractor had failed to notify defendant in the manner provided in the 1887 Act that he was indebted to plaintiffs for such materials.

Referring to provisions of the 1887 Act now codified as G.S. 44-8 and G.S. 44-12, this Court, in opinion by Merrimon, J. (later C. J.), said: "It is further provided, that if any such contractor or architect shall fail to furnish such itemized statement, he shall be guilty of a misdemeanor, and, upon conviction, fined or imprisoned, or both, in the discretion of the court. This stringent provision is directed against, not the owner of the property, but the contractor. The purpose is to compel the latter to supply the itemized statement, so that the laborer

may be benefited, have his right facilitated, and the owner of the property may be reasonably protected. There is no liability created on the part of the latter if the itemized statement is not supplied to him; he cannot compel the contractor to furnish him with it, nor is he presumed to know that he has not paid the laborer or mechanic, or that he owes him any particular sum. It may be, that the contractor has paid him or secured the sum due him to his satisfaction. It would be alike unreasonable and unjust to create such liability on the part of the owner of the property in the absence of the statement required. It would tend strongly to prevent such owners from improving their property, and such a purpose cannot be attributed to the Legislature, in the absence of some language or provision making it manifest."

In *Pumps, Inc. v. Woolworth Co., supra,* the contractor had furnished the defendant-owner a *false* affidavit to the effect all bills for labor and material had been paid. It was held that plaintiff, which furnished a pump to the contractor, was not entitled to recover from the defendant-owner. The following excerpt from the opinion of Barnhill, J. (later C. J.), is pertinent:

"While it is true that when a contractor furnishes a list of laborers and materialmen *to whom he is indebted,* the owner must retain a sufficient part of the contract price to satisfy such claims, (citations) the burden is on plaintiff to show that such notice was so given by the contractor or that the owner was notified directly by him. There is no lien until and unless the statutory notice either under C.S. 2439 (G.S. 44-8), or under C.S. 2440 (G.S. 44-9), has been given. *Pinkston v. Young, supra.*

"Such notice or itemized statement must be filed in detail specifying the material furnished or labor performed and the time thereof. It must further show *the amount due and unpaid* so as to put the owner on notice that such amount is demanded. (Citations). Neither invoices furnished under the contract nor statements made by the contractor to enable him to procure what is due, nor mere knowledge of the owner of the existence of the debt is sufficient to charge him with liability. (Citations)" (Our italics).

True, Cannon did not attach to the statements he submitted to the Architect as a basis for progress payments an affidavit that he had paid the items shown thereon. Nor did he expressly declare that he had made such payments. On the other hand, nothing appears thereon to indicate Cannon had not paid the items listed thereon. Article 12 of the Contract expressly provides such statements shall consist solely of items the contractor has paid. Hence, the Architect and Bratton had

reasonable grounds to assume Cannon had made such payments. Be that as it may, Cannon gave no notice of unpaid amounts due plaintiff within the purview of G.S. 44-8.

The Contract was terminated solely on account of Cannon's inability, for lack of finances, to perform it. He advised Bratton by letter to this effect. Consequently, the provisions of Article 22 of said General Conditions and of Article 15 of the Contract do not apply. They refer to the "Owner's Right to Terminate Contract" and rights and obligations of the owner as a result of such termination.

We perceive no prejudicial error in respect of the orders (1) permitting defendants Bratton to file a further answer and defense and (2) overruling plaintiff's demurrer to such further answer and defense. Too, these orders have no bearing on whether the evidence offered by plaintiff was sufficient to withstand nonsuit.

Nor do we perceive prejudicial error in respect to the court's rulings on evidence. Decision as to nonsuit is not based in whole or in part on evidence admitted over plaintiff's objections. Too, the rules of evidence are not so strictly enforced where jury trial is waived. *Bizzell v. Bizzell,* 247 N.C. 590, 604, 101 S.E. 2d 668; *Everette v. Lumber Co.,* 250 N.C. 688, 694, 110 S.E. 2d 288.

With reference to the tender of judgment referred to in our preliminary statement: G.S. 1-541, in pertinent part, provides: "The defendant, at any time before the trial or verdict, may serve upon the plaintiff an offer in writing to allow judgment to be taken against him for the sum or property, or to the effect therein specified, with costs." Here, the judgment of nonsuit had been entered, plaintiff had appealed therefrom and the session of court had expired by limitation before the tender was made. Suffice to say, such tender was not authorized and is not in compliance with G.S. 1-541. On appeal, we consider the status of the case when presented to and passed upon in the superior court.

Defendant Michelle T. Bratton did not sign the Contract. There is no evidence she had any dealings with plaintiff or participated in negotiations with Cannon. Nor is there evidence or presumption that her husband was her agent. *Pitt v. Speight,* 222 N.C. 585, 24 S.E. 2d 350; *Air Conditioning Co. v. Douglass,* 241 N.C. 170, 84 S.E. 2d 828.

As to defendant Michelle T. Bratton, the judgment of nonsuit is affirmed in its entirety.

As to defendant John Bratton, Jr., the judgment of nonsuit is affirmed as to the items for materials sold and delivered by plaintiff to Cannon prior to January 1, 1962, to wit, a total of $1,702.74; but as to the three items, a total of $72.16, the judgment of nonsuit is reversed.

There was evidence sufficient to support a recovery by plaintiff for these items, to wit, testimony that defendant John Bratton, Jr., in January, 1962, by agreement with plaintiff, became obligated to pay therefor.

It is ordered that the costs on this appeal be taxed as follows: One-half to plaintiff and one-half to defendant John Bratton, Jr.

As to defendant Michelle T. Bratton: Affirmed.

As to defendant John Bratton, Jr.: Affirmed in part and reversed in part.