PARNELL-MARTIN SUPPLY CO., INC., A CORPORATION v. HIGH POINT MOTOR LODGE, INC., OWNER (AND CONTRACTING PARTY FOR IMPROVEMENTS) TALTON CONSTRUCTION COMPANY, INC., CONTRACTOR AND E. R. WOOLARD, D/B/A QUALITY PLUMBING AND HEATING COMPANY, SUBCONTRACTOR

No. 7026SC59

(Filed 6 May 1970)

1. **Laborers' and Materialmen's Liens § 3—— materials furnished to subcontractor —— effect of lien**

A materialman's lien for materials furnished a subcontractor substitutes claimant to the rights of the principal contractor and is enforcible against the sum due from the owner at the time notice is given, regardless of the state of the account between the principal contractor and the subcontractor to whom the materials were furnished.

**2. Laborers' and Materialmen's Liens § 6—** claim against owner — burden of proof — notice before final payment

When a materialman furnishes the required itemized statement to the owner, the owner must retain a sufficient amount of the contract price to satisfy the claim; in order to hold the owner liable, the materialman has the burden of showing that the owner was notified of the claim by him or by the general contractor before the owner made final payment to the general contractor.

**3. Payment § 1—** delivery and acceptance of a check

In the absence of a contrary agreement, the delivery and acceptance of a check is not payment as between the parties until the check is paid by the bank on which it is drawn.

**4. Laborers' and Materialmen's Liens § 8—** action against owner — notice before final payment — payment by check — sufficiency of evidence

In this action against a motel owner to enforce a materialman's lien for materials furnished a subcontractor for use in construction of the motel, plaintiff's evidence affirmatively shows that the owner had made final payment to the general contractor at the time notice of the claim was given the owner, and nonsuit was properly granted, where plaintiff introduced evidence that on 18 October 1966 it sent the owner notice by registered mail of its claim of lien on the building, that on 14 October 1966 the owner issued its check to the general contractor for the balance due on the general contract, that the check was deposited by the general contractor on 17 October 1966, and that the check was subsequently paid by the drawee bank on 21 October 1966, plaintiff's notice mailed to the owner on 18 October having imposed no duty on the owner to stop payment on the check to the general contractor even if such notice was received before the check was paid by the drawee bank on 21 October.

**5. Laborers' and Materialmen's Liens § 3—** action against owner — failure of general contractor to notify owner of claim

No cause of action in favor of a materialman arises against the owner for failure of a general contractor to furnish the owner a statement of sums due materialmen before receiving payment from the owner in violation of G.S. 44-8.

**6. Laborers' and Materialmen's Liens § 3—** action against general contractor — failure of contractor to notify owner of claim — failure to show damages

In this action by a materialman against a general contractor based on the alleged failure of the general contractor to notify the owner of sums due plaintiff for materials furnished a subcontractor before accepting payment from the owner in violation of G.S. 44-8, plaintiff's evidence was insufficient for the jury where it failed to show any damage to plaintiff by reason of defendant's failure to comply with the statute, there being no evidence that the subcontractor is unable to pay the amount owed plaintiff for the materials.

APPEAL from *May, J.,* 4 August 1969 Schedule B Session, MECKLENBURG Superior Court.

This is an action seeking to recover $3,737.65; the amount allegedly due on an account between plaintiff and E. R. Woolard doing business as Quality Plumbing and Heating Company (hereinafter called Woolard).

Plaintiff named High Point Motor Lodge, Inc. (hereinafter called High Point), Talton Construction Company, Inc. (hereinafter called Talton), and Woolard as defendants in this action.

Plaintiff's evidence tended to show the following: High Point contracted with Talton as general contractor for the construction of a motel. Talton then subcontracted the plumbing, heating and air-conditioning to Woolard. Plaintiff furnished Woolard with plumbing materials which were used by Woolard in fulfilling its contract with Talton. These plumbing materials, in the amount of $3,737.65, were furnished at the request of Woolard and were charged to Woolard's open account with plaintiff. Woolard has never paid plaintiff for these materials.

Plaintiff's evidence tended to show that on 7 October 1966, it sent a letter to Talton stating that Woolard was indebted to plaintiff in the sum of $3,737.65 for materials furnished on the High Point motel job; that on 10 October 1966, plaintiff's agents made verbal demand upon Talton for payment to plaintiff for materials furnished to Woolard. Plaintiff's evidence further tended to show that, at the time of this demand, Talton had paid Woolard in full on its subcontract.

Plaintiff's evidence tended to show that plaintiff, on 18 October 1966, sent by registered mail to High Point, Talton and Woolard, formal notice of its claim of lien on the building. Plaintiff's evidence further tended to show that High Point had received from Talton a bill dated 1 September 1966 and designated a Final Certificate. The bill was for the balance due on the general contract. In response to this bill, High Point, on 14 October 1966, paid Talton by check the balance due on the general contract. This check was endorsed by First Citizens Trust Co. on 17 October 1966 and was subsequently paid by North Carolina National Bank in High Point, North Carolina on 21 October 1966.

At the close of plaintiff's evidence judgment of involuntary nonsuit was entered in favor of defendants High Point and Talton; but, since Woolard had not been properly notified of the trial date, the action was continued as to Woolard.

Plaintiff appealed assigning as error the entry of nonsuit as to High Point and Talton.

*Newitt & Newitt, by John G. Newitt, Jr., for appellant.*

*Sanders, Walker & London and Wallace, Langley & Barwick, by F. E. Wallace, Jr., and James D. Llewellyn for appellees.*

BROCK, J.

[1]    "The statutes of this State, notably Revisal, secs. 2019, 2020, and 2021 [G.S. 44-6, G.S. 44-8, and G.S. 44-9], provide for a lien on the property in favor of subcontractors, laborers, and materialmen supplying material for the erection, repair, or alteration for the building, when they come within certain conditions and give the notices contemplated and required by the law, and enforcible to an amount not to exceed the sum due from the owner at the time of notice given." *Brick Co. v. Pulley,* 168 N.C. 371, 84 S.E. 513. "And where such lien arises under the provisions of the statute it does so by substituting the claimant to the rights of the contractor, enforcible, as stated, against any and all sums which may be due from the owner at the time of notice given, or which are subsequently earned under the terms and stipulations of the contract. In well considered cases it is said to amount to an assignment *pro tanto* of the amount due or to become due from the owner to the principal contractor, and this regardless of the state of the account between the principal contractor and the subcontractor, who may be the debtor of the claimant." *Brick Co. v. Pulley, supra.* See also, *Building Supplies Co. v. Hospital Co.,* 176 N.C. 87, 97 S.E. 146; *Powder Co. v. Denton,* 176 N.C. 426, 97 S.E. 372.

Applying the principles enunciated above, the question presented by this appeal is what sum, if any, was owing from High Point, the owner, to Talton, the general contractor, at the time Parnell-Martin, the material furnisher, gave notice of the amount due them from Woolard, the subcontractor, for plumbing materials furnished Woolard to be used in the construction of the motel for High Point.

[4]    Plaintiff's evidence is sufficient to establish that it furnished materials to Woolard in the amount of $3,737.65 to be used in the construction and that plaintiff, on 18 October 1966, sent by registered mail to High Point formal notice of its claim of lien on the building. Plaintiff's evidence further tends to show that High Point received a bill from Talton dated 1 September 1966, entitled Final Certificate; that High Point, on 14 October 1966, drew a check on its account with the North Carolina National Bank in High Point payable to Talton in payment of the Final Certificate; that the check was deposited by Talton on 17 October 1966; and that the

check was subsequently paid by the North Carolina National Bank in High Point, the drawee bank, on 21 October 1966.

G.S. 44-9 provides in part as follows: "The notice shall be in the form of an itemized statement of the amount due, except where the contract is entire for a gross sum and cannot be itemized. *Upon the delivery of the notice to the owner, agent, or lessee,* the claimant is entitled to all the liens and benefits conferred by law in as full a manner as though the statement were furnished by the contractor." (Emphasis added.)

[2] When the materialman furnishes the required itemized statement to the owner, the owner must retain a sufficient amount of the contract price to satisfy the claim; however, the burden is on the person furnishing materials to show that such notice was so given by the general contractor (G.S. 44-8) or that the owner was notified directly by him (G.S. 44-9), *at a time before the owner makes final payment to the general contractor. Pumps, Inc. v. Woolworth Co.,* 220 N.C. 499, 17 S.E. 2d 639; *Pinkston v. Young,* 104 N.C. 102, 10 S.E. 133.

It is earnestly contended by plaintiff that since notice of lien was mailed to High Point on 18 October 1966, High Point had sufficient notice of plaintiff's claim to impose upon High Point the duty to stop payment on its check prior to its being paid by the drawee bank on 21 October 1966.

[3, 4] It is well settled that in the absence of an agreement to the contrary, the delivery and acceptance of a check does not constitute payment and is therefore only conditional payment of a debt. *Lumber Co. v. Hayworth,* 205 N.C. 585, 172 S.E. 194. And the check does not constitute payment of the item covered by it until the check itself is paid by the bank on which it is drawn. *Wilson v. Finance Co.,* 239 N.C. 349, 79 S.E. 2d 908. However, this principle of law applies to the parties to the giving and acceptance of the check, i.e., drawer-payee, debtor-creditor, vendor-purchaser, and the principle is not available to plaintiff in this case. *Peek v. Trust Co.,* 242 N.C. 1, 86 S.E. 2d 745. In the absence of a showing of fraud practiced against plaintiff, the issuance by High Point on 14 October 1966 (Friday) to Talton of its (High Point's) check in payment of the balance due on the contract, the prompt deposit by Talton on 17 October 1966 (Monday), and the payment of the check by the drawee bank on 21 October 1966 (Friday), constituted full payment of the contract price by the owner on 14 October 1966, prior to notice from plaintiff to the owner of any amount due plaintiff for materials furnished.

Plaintiff's notice mailed to the owner on 18 October 1966 imposed no duty on the owner to undertake to stop payment on the check, even if such notice was received before the check was actually paid by the drawee bank on 21 October 1966. Where the plaintiff's evidence affirmatively shows that nothing was due the contractor at the time notice was given, nonsuit is correctly granted. *Dixon v. Ipock,* 212 N.C. 363, 193 S.E. 392.

[5] As a second cause of action plaintiff seeks recovery of damages in the sum of the amount due it. Plaintiff alleges that Talton was under statutory duty (G.S. 44-8) to furnish to the owner a statement of sums due materialmen before receiving payment from the owner, and that a violation of this statute is declared a misdemeanor (G.S. 44-12). It is plaintiff's contention that these statutes were enacted for the benefit of materialmen, etc., and that a violation gives rise to a cause of action in plaintiff's favor to recover damages measured by the amount owed to plaintiff of which the general contractor failed to advise the owner before accepting payment on the general contract.

Assuming, without deciding, that such a cause of action does accrue to plaintiff against the general contractor, it is clear that no such cause of action arises against the *owner* for a violation of the statute by the general contractor. *Oldham & Worth, Inc. v. Bratton,* 263 N.C. 307, 139 S.E. 2d 653. Therefore, nonsuit as to High Point on the second cause of action was proper.

[6] In support of its alleged second cause of action against the general contractor (Talton), plaintiff's evidence tended to show that no notice, as required by G.S. 44-8, was given by Talton to High Point. However, there was no evidence to show any damage to plaintiff by reason of Talton's failure to comply with the statute. Plaintiff has neither alleged nor offered evidence to show that Woolard is unable to pay plaintiff the account. There is no evidence of Woolard's insolvency or inability to respond to judgment; in fact, this action is still pending against Woolard. Plaintiff must not only show neglect to perform a duty owed to him; he must also allege and show in what way he has been damaged by such neglect. The nonsuit as to Talton on the second cause of action was proper.

Plaintiff's remaining assignments of error have been considered, but we find no prejudicial error.

Affirmed.

BRITT and GRAHAM, JJ., concur.