COMMERCIAL NATIONAL BANK OF CHARLOTTE v. FIRST
NATIONAL BANK OF GASTONIA, et al.

*Banks—Negotiable Instruments—Bank Checks.*

1. The holder of a check cannot maintain an action against the bank upon which it is drawn until after its acceptance by the bank.

2. A stipulation stamped on the face of a check that it will positively not be paid to a certain company or its agents, is a valid restriction and binding on the holder.

3. Such stipulation on a check is not an unreasonable restraint upon trade and when made for the purpose of preventing business rivals from ascertaining the extent and nature of the drawer's transactions, is not a boycott or conspiracy against the inhibited collector.

4. The drawer of such a check cannot be sued thereon until the check has been presented to the drawee by some agency other than the inhibited one and payment refused.

CIVIL ACTION, heard before *Starbuck, J.*, at Spring Term, 1896, of GASTON Superior Court, on a case agreed as follows:

" I. That the plaintiff and defendants banks are both national banks duly incorporated, and engaged in the general banking business, the former being located in the city of Charlotte, N. C., and the latter in the town of Gastonia, N. C., and were so engaged at the times hereinafter mentioned.

" II. That at the times hereinafter mentioned the defendants, Costner, Jones & Company, were a copartnership located in the town of Gastonia, and engaged in the general mercantile business. Also, that the Gastonia Banking Company was at said times a copartnership engaged in the general banking business, in the said town of Gastonia, as private bankers.

" III. That the individual members of the firm, known as the Gastonia Banking Company, were at said times also engaged in the general mercantile business in Gastonia, under the firm name of John F. Love & Co., and were rivals and competitors with the defendants, Costner, Jones & Co., for the trade in the said town and surrounding country.

" IV. That before the 1st day of October, 1895, the defendants, Costner, Jones & Co., being desirous that their rivals in business should not know of or handle the checks drawn by them on the defendant bank, (with which they kept their banking account,) approached the officers of said bank and requested that some means be devised by which the Gastonia Banking Company might be prevented from handling or collecting the checks drawn by said copartnership on said defendant bank, whereupon the officers of the defendant bank suggested to its co-defendants that if the latter would stamp across the face of their checks that such checks would not be honored if presented for collection by the Gastonia Banking Company or its agent, such endorsement would prevent said checks from being collected through its rival, the Gastonia Banking Company.

" V. That a number of the customers and other depositors with the defendant bank made like requests at and before said time, some of whom were rivals in business with the firm of John F. Love & Co., and some not.

"VI. That thereupon, and at the request of its customers, the defendant bank had rubber stamps prepared, in conformity with the foregoing suggestions, and furnished same to such of its customers and depositors as desired them; and in fact a great many of its said customers did secure and use said stamps in issuing checks upon said bank, many of whom, however, were merchants in rivalry with the firm of John F. Love & Co., but some were not.

" VII. That on the 2d day of October, 1895, the defendants, Costner, Jones & Co., being indebted to the Charlotte Hardware Company, of Charlotte, North Caro- lina, in the sum of $134.41, drew and transmitted to the said hardware company in payment of said debt their check in the following words and figures:

> *This check positively will not be paid to the Gastonia Cotton Manu- facturing Co., the Gastonia Bank- ing Co., or any of their agents.*
>
> " COSTNER, JONES & CO.,
>     Successors to J. D. Moore & Co.,
>   General Merchants and Cotton Buyers.
>
>                      GASTONIA, N. C., Oct. 2d, 1895.
>   Pay to the order of the Charlotte Hardware Company . . . . . . . . . . . . . . . . . . $134.41.
>   (Signed)                COSTNER, JONES & CO.
> To the First National Bank,
>         Gastonia, N. C.

" VIII. That the Charlotte Hardware Co., upon receipt of the said check, by proper endorsement assigned and transferred said check to the plaintiff bank for full value; and the plaintiffs thereupon transmitted the said check to the Gastonia Banking Company (its regular correspond- ent at Gastonia) for collection and remittance.

" IX. That, upon receipt of said check, the Gastonia Banking Company immediately presented the same to the defendant bank for payment, during legal banking hours, which payment was refused; whereupon, at the request of the Gastonia Banking Company, B. G. Bradley, a notary public in and for said county and State, did, on the 4th day of October, 1895, again present the said check to the defendant bank for payment, during legal banking hours, which payment was again refused, when the said notary duly protested the same for non-payment, and duly noti- fied the drawers and endorsers of said check of its non- payment.

118—50

" X. That at the time of the drawing of said check, and at all times thereafter up till and including the protesting thereof, the drawers, Costner, Jones & Co., had funds on general deposit in the defendant bank, subject to check, more than sufficient to pay said check, which funds at said time were not liable to any lien of said bank or otherwise encumbered, and that said bank refused to honor and pay said check because it was presented through the said Gastonia Banking Company, contrary to the provision of the endorsement on said check.

" XI. That, at the times aforesaid, the defendant bank and the Gastonia Banking Company were the only institutions or individuals engaged in the banking business in the town of Gastonia, and after the said check was protested it was returned to the plaintiff, and thereafter this action was instituted against the defendants for a recovery thereon.

" XII. That the defendant bank never required any of its customers to stamp their checks with the regular stamp mentioned as a condition of payment, and in point of fact some of its customers did not use said stamp, and these last-named checks were promptly paid by the defendant bank whenever presented.

His Honor gave judgment for plaintiff and defendant appealed.

*Messrs. Burwell, Walker & Cansler*, for plaintiff.
*Messrs. Jones & Tillett*, for defendants (appellants).

CLARK, J. : The holder of a check cannot maintain an action against the bank upon which the check is drawn until after the acceptance of the check by the bank. *Bank* v. *Mallard*, 10 Wallace, 153 ; *Hawes* v. *Blackwell*, 107 N. C., 196 ; *Marriner* v. *Lumber Co.*, 113 N. C., 52.

This is the uniform line of decisions in the Federal courts and our own, and it is sustained by the overwhelming weight of authority in other courts, though there are a few decisions in other states to the contrary. The bank is the agent of the drawer; till acceptance of the check, it has assumed no liability to the payee; its liability, if any, is to the drawer whose checks it has agreed to pay if it has the drawer's funds in hand, and for breach of that contract it is liable to the drawer, not to the payee—" To its own master it must stand or fall." A check is simply an order given by the principal upon his agent, and it is always open to the principal to countermand an order to its agent before it is executed, and there are occasions when it is important, to prevent imposition, that the drawer should have power to stop the payment of his check, without casting any liability upon the drawee. If the principal, the drawer, die before a check is presented, it becomes invalid, which could not be the case if the mere drawing the check created any liability in the drawee.

But the more important point, since it is now presented to us for the first time, is the validity of the stipulation stamped on the face of the check: " This check will positively not be paid to the Gastonia Banking Company or its agents." It appears that the check has never been presented to the drawee, the defendant bank, except by an agent of the Gastonia Banking Company. Consequently, if this restriction is valid, the holder cannot maintain this action against the drawer till the check has been presented to the drawee by some other agency and payment refused. In England the system of " crossed checks " has long been recognized as valid. 2 Daniel Neg. Inst., Section 1585, a; *Smith* v. *Bank*, 10 L. R., (O. B.,) 295, which was affirmed on appeal, and is reported 1 L. R., 2 B. Div., 31. By that system there is stamped across the face of

the check the name of a certain banker through whom it must be presented for payment, and if presented by any one else it will not be honored. This does not destroy its negotiability in any wise. The present case does not go that far, but merely stipulates that the check will not be honored if presented through one agency named. This cannot be deemed an unreasonable restriction of trade. Nor is it a boycott. There is no evidence of a conspiracy to injure the agency named, but it is agreed as a fact that it was an effort on the part of the drawer firm to prevent its transactions and the nature and extent of its business becoming known to a rival house by its checks passing through that channel. Besides, if it were a boycott, the parties to it are the drawer and the payee who accepted the check with that restriction stamped on it. And if it was an illegal transaction, the check itself, and not merely the stipulation which is part of it, would be void. *Ex mala causa non oritur actio.* The restriction is a part of the check, (Tiedman Com. Paper, Sections 41 and 42; *Benedict* v. *Cowen*, 49 N. Y., 396,) and if it is invalid the court could not separate the good from the bad, (*Saratoga* v. *King*, 44 N. Y., 87,) but it would all be bad and the holder could not recover. In analogy, a conveyance of property, real or personal, with a condition not to alien to a certain person or class of persons, or for a certain time, is valid. *Cowell* v. *Springs*, 100 U. S., 57; *Gray* v. *Blanchard*, 8 Pick., 288; Sheppard's Touch Stone, 129, 131 ; Coke on Littleton, 223.

In *Smith* v. *Lawrence*, 2 N. C., 200, this Court held that a note could be limited so as to be payable to the payee only. But it is not necessary to consider here the principle maintained in that case, that the drawee can by stipulation therein make the check not assignable, for this is not attempted here, but there is simply a stipula-

tion that it shall not be paid if presented through the agency named. *Wilcoxon* v. *Logan*, 91 N. C., 449, holds merely that where a note is made payable to A. B., without the addition of the words " or order," or " bearer," the holder thereof can maintain an action thereon, being the party in interest. There can be no question raised as to the validity of an express stipulation that the note could not be assigned at all, or would not be honored if presented by a particular party, as in this case, nor by any party except one named, as in the case of the English " cross checks." These questions could not arise, for there was in that case no stipulation to either effect. On the facts agreed, judgment should have been entered for the defendants.

Reversed.