ATLAS POWDER COMPANY v. JAMES DENTON AND OTHERS, TRADING AS DENTON BROS. & CAGLE, AND AS DENTON BROS.; CALLAHAN CONSTRUCTION COMPANY, AND VIRGINIA-CAROLINA RAILWAY COMPANY.

(Filed 13 November, 1918.)

1. Railroads — Liens — Materialmen — Statutes — Interpretation—Notice—
   Limitation of Action.

   Revisal, sec. 2021, is not repealed by chapter 150, Laws 1913, the later act expressly purporting to be an amendment, and there is no conflict between the two acts that will fall within section 9, Laws 1913, repealing all acts in conflict therewith; nor between section 2021 of the Revisal, and section 2018 as amended, it being the legislative intent to extend their provisions to those who furnish materials to the subcontractors of rail-

roads; and, construing the above sections in connection with section 2028 as amended, the furnisher of materials to the contractor on an entire contract may file his itemized statement with the railroad company within six months after its completion, and maintain his action to enforce his lien, when commenced within six months thereafter. Revisal, sec. 2027.

**2. Liens—Materialmen—Notice—Subcontractors—Balance Due.**

The right of one, who furnishes materials to a subcontractor, to a lien upon the building does not depend upon the state of the account between the contractor and the subcontractor, but upon the amount due the contractor by the owner at the time of the proper filing of the notice in the manner and form required.

ACTION, heard by *Shaw, J.,* upon exceptions to the report of a referee, at March Term, 1918, of FORSYTH.

The plaintiff brought the action for the recovery of $1,526.67, alleged to be due by the defendants, Denton Bros. & Cagle, for materials furnished them, and which were used in the construction of the railroad belonging to the Virginia-Carolina Railway Company, the said firm being subcontractors of the Callahan Construction Company, which held the contract with the railroad company for the construction of a part of its road in Ashe County, in this State.

An extract from that part of the referee's report, which was sustained by the court, is as follows:

"(1) On 2 June, 1913, the Callahan Construction Company entered into a contract with the Virginia-Carolina Railway Company, by the terms of which the former company contracted to construct a line of railway from a point on the State line between Virginia and North Carolina, in Ashe County, which point was at or near a station called Creek Junction, to a terminus at Elkland, in the State of North Carolina.

"(2) Thereafter, on the 18th day of June, 1913, the Callahan Construction Company contracted with the partnership of Denton Bros. & Cagle to sublet to them the work of constructing sections 18, 19, 20 and 21 of the said line of railway, embracing approximately four miles, and being situated in Ashe County, North Carolina. That pursuant to said contract, Denton Bros. & Cagle constructed all of the said sections, with the exception of section 18, the work of constructing which was by agreement taken over by the Callahan Construction Company.

"(3) That thereafter, under a contract with Denton Bros. & Cagle, the Atlas Powder Company sold and delivered to the said firm for use in the construction of the said sections of railway certain explosives, and the said explosives so furnished were actually used in the construction of these sections. Under this contract the first of said explosives was furnished on 19 July, 1913, and the last explosives were furnished on the 29th day of November, 1913, and deliveries were made from time to time during the period intervening those dates.

"(4) That for said explosives, Denton Bros. & Cagle are indebted to the Atlas Powder Company in the sum of $1,526.67, with interest thereon from 28 November, 1913.

"(5) That on 16 May, 1914, within six months from the date when the last explosives were furnished, the Atlas Powder Company caused to be duly served upon the Virginia-Carolina Railway Company and upon the Callahan Construction Company notices setting forth itemized statements of its debt against Denton Bros. & Cagle and asserting its claim to a lien against the property of the said railway company, and also its right to priority of payment of its debt out of any funds then due or thereafter to become due from the Virginia-Carolina Railway Company to the Callahan Construction Company, and to priority of payment out of any funds due or to become due from the Callahan Construction Company to Denton Bros. & Cagle. Also, on 28 May, 1914, the Atlas Powder Company filed a statement of its claim to a lien against the property of the Virginia-Carolina Railway Company in the office of the Clerk of the Superior Court of Ashe County, North Carolina.

"(6) That on 10 November, 1914, within six months after it had served the notices above mentioned, the summons was issued in this cause by the Atlas Powder Company to institute suit for the recovery of the amount due for the explosives furnished Denton Bros. & Cagle and used by them in constructing the said sections of railway.

"(7) That the Virginia-Carolina Railway Company became indebted and paid to the Callahan Construction Company subsequent to 31 May, 1914, the sum of $75,830.43 on account of their contract for the construction of their line of railway in North Carolina, and of this amount the sum of $3,384.89 was for sections 19, 20 and 21, the sections upon which the explosives furnished by the Atlas Powder Company had been used.

"(8) That the Callahan Construction Company, on 18 June, 1914, received on its contract with Virginia-Carolina Railway Company payments aggregating the sum of $29,399,17, and that after said date it received the aggregate sum of $19,285.63.

"(9) That from the itemized statement of the estimate furnished Denton Bros. & Cagle by Callahan Construction Company, the estimate of 20 June, 1914, amounted to the sum of $1,028.69."

The referee found as a conclusion of law:

1. That as plaintiff had not filed its notice of lien with the railway company within thirty days after the materials were furnished by it, and did not commence suit to enforce its lien within ninety days after such notice was given, as required by Public Laws 1913, ch. 150, sec. 2018, it had no lien on the funds in the hands of the railway company

or Callahan Construction Company belonging to Denton Bros. & Cagle and was not entitled to judgment against the railway and the Callahan companies, or either of them, but that it might have a personal judgment against Denton Bros. & Cagle if they had been personally served with a summons, which was not done. He sustained the pleas in bar and finally adjudged that plaintiff could not recover, and recommended that judgment be entered dismissing the action and for costs against the plaintiff. The judge sustained some of plaintiffs' exceptions to this report, and overruled some of its findings as to fact and law, and entered a judgment of which the following is a part:

"It appearing to the satisfaction of the court that defendants James Denton and others, trading as Denton Bros. & Cagle, and as Denton Bros., are indebted to the plaintiff in the sum of $1,526.67, with interest thereon from 28 November, 1913, for materials, consisting of powder and other explosives, which were furnished said defendants by the plaintiff and used by said defendants in execution of the contract existing between them and the Callahan Construction Company for the construction of sections 19, 20 and 21 of the line of railway of the Virginia-Carolina Railway Company, said sections being located in the county of Ashe, North Carolina, and that plaintiff, on 16 May, 1914, and within six months from the date when the last of said materials were furnished caused to be served upon the Virginia-Carolina Railway Company and Callahan Construction Company notice of lien, as required by the provisions of chapter 48 of the Revisal of 1908, and the acts amendatory thereof, and that on 28 May, 1914, the plaintiff filed a statement and notice of its claim of lien against the property of the Virginia-Carolina Railway Company in the office of the Clerk of the Superior Court of Ashe County, North Carolina; and that the plaintiff began to furnish to the defendants Denton Bros. and Denton Bros. & Cagle the materials as aforesaid on 19 July, 1913, and finished furnishing said materials on 29 November, 1913, deliveries being made from time to time during the period intervening between these days, all in accordance with a contract for said materials between the plaintiff and the defendants Denton Bros. & Cagle and Denton Bros."

The court thereupon adjudged that plaintiff recover of the railway company and the Callahan Construction Company the sum of $1,028.69, the amount due to Denton Bros. and Denton Bros. & Cagle, and declared the sum to be a material furnisher's lien under Revisal of 1908, ch. 48, and amendments thereto, upon the line of the railway company in the county of Ashe, and particularly upon sections 19, 20, and 21 thereof, as of 19 July, 1913, the referee having held that the act of 1913, being chapter 150 of the Public Laws of that year, was the only law upon the

subject, it having repealed sections 2018, 2021, 2022, 2027 and 2028 of the said Revisal.

From the judgment both parties appealed. The plaintiff because it claimed to be entitled to recover $1,526.67 and interest, or its entire claim, with a lien therefor under the statute, and defendant because it claimed that plaintiff was not entitled to recover anything, neither under the statute before mentioned nor under its garnishment proceedings, as this State is not the *situs* of the debt.

*Philip Williams and Manly, Hendren & Womble for plaintiff.*
*S. C. Bowie, S. P. Graves, A. E. Holton,.and L. M. Swink for defendants.*

WALKER, J., after stating the case: The contention of the defendants is that chapter 150 of Public Laws 1913 repeals sections 2021 and 2022 of the Revisal in respect to the lien of mechanics, laborers, artisans, for work and labor done in the construction or repair of a railroad, and of persons who furnish material for the same, and that now the only lien, and remedy to enforce it, is that given by the said act of 1913, and that as plaintiff's notice of lien was not filed with the railroad company in this case within the time fixed by section 2018, they cannot recover; while the plaintiff contends that section 2021 was not repealed by Laws of 1913, and is still in force, and as the notice was given within the time fixed by section 7 of chapter 150 of those laws, they are entitled to recover the full amount due to them by the subcontractors to whom they furnished the materials .which were used on sections 19, 20 and 21 of the railroad.

The referee held with the defendants, and the judge sustained plaintiff's exceptions to the report of the referee, but gave judgment only for a part of the claim, though he was of the opinion that the Laws of 1913 did not repeal sections 2021 and 2022 of the Revisal. This conclusion was reached because the presiding judge held that the amount to be recovered did not depend upon the state of the account between the owner of the railroad and the contractor, but upon that between the contractor and the subcontractor.

The judge held correctly that chapter 150 of the Laws of 1913 did not repeal section 2021 of the Revisal, but we think he erred in holding that the state of the account between the owner and the contractor is not the standard by which to measure the amount of the plaintiff's recovery.

The Laws of 1913 did not repeal section 2021 of the Revisal because, on its face, it purports simply to amend it as follows: "And after the notice herein provided is given, no payment to the contractor shall be

a credit on or a discharge of the lien herein provided." It would appear from this that the Legislature intended to continue that section in full force and effect. Chapter 150 of the Laws of 1913, contains the following sections:

"Sec. 9. That all local lien laws are hereby repealed, and all laws and parts of laws in conflict with this act, whether local or public, are hereby repealed.

"Sec. 10. This act shall be in force from and after its ratification."

Those sections do not repeal section 2021 of the Revisal because there is no conflict between that section and the Laws of 1913, chapter 150. The supposed conflict is said to exist between section 2021 of the Revisal and section 2018, as it appears in the Laws of 1913, chapter 150, but the two sections can be easily reconciled.

Section 2018 was amended by Laws of 1913 so as to extend the benefit of its provisions to those persons who furnish materials, and, further, it allows notice to be given to the railroad company, in the case of a laborer, within twenty days after the performance of labor for thirty or a less number of days, and, in the case of one who has furnished material, where the contractor has become indebted for more than thirty days for material, the notice must be given within thirty days after the materials were furnished, by the person who furnished the materials.

Under section 2021 and section 2028, as amended by the Laws of 1913, chapter 150, the statement of the account is required to be delivered to the owner at any time before he has paid the contractor and within six months after the completion of the labor or the final furnishing of the materials. It, therefore, appears that there is a substantial difference between section 2018 and section 2021 as amended by the Laws of 1913. Besides, section 2028, as amended by those laws, reads as follows: "Notice of lien shall be filed, as hereinbefore provided, except in those cases where a shorter time is prescribed, at any time within six months after the completion of the labor or the final furnishing of the materials or the gathering of the crops." The "shorter time" here mentioned evidently refers to the notice required to be given by section 2018, and it was intended to provide for a longer time within which to give notice, that is, six months, where the transaction has been completed by the "final furnishing" of the materials, and this is that kind of a case. The notice, therefore, was given in due time and it becomes unnecessary to consider the question raised as to the legal effect of the garnishment proceedings.

The second question relates to the amount of the recovery. The court held that plaintiff was entitled to recover the sum of $1,028.69, while the plaintiff insisted that it was entitled to judgment for the full amount of its claim, or $1,526.67, and whether the one amount or the

other should be allowed depends, as we have intimated, upon the question whether the true amount is to be determined by the state of the account between the railroad company and the contractor or between the latter and his subcontractor. It is manifest from a simple reading of the statute, as we think, that its meaning is that the plaintiff shall receive the full amount of his just claim for materials furnished by it, provided there is so much due by the railroad company to the contractor when the notice is given, as provided by the law, and it has been so held by this Court.

The question arose in *Brick Co. v. Pulley,* 168 N. C., 371, where, as the syllabus of the case shows, the Court decided: "The claimants for liens for material, etc., furnished for building, under Revisal, secs. 2020 and 2021, are not only required to show, in order to establish their liens, that the materials were actually used in its construction, but that they were furnished to some one having contract relations to the work. Revisal, sec. 2019. One who has furnished material used in the construction of the building under contract with the subcontractor, by giving the proper notice to the owner, is substituted to the rights of the contractor, and his lien is enforcible against any and all sums which may be due from the owner to him at the time of notice given or which are subsequently earned under the terms and conditions of the contract. Revisal, secs. 2019, 2020, 2021. One furnishing material to a subcontractor, which is used in a building, who gives to the owner the notice required by statute before payment made to the contractor, acquires a right to enforce his statutory lien regardless of the state of the account between the contractor and the subcontractor."

*Justice Hoke* says, in the opinion of the Court as delivered by him: "Where such lien arises under the provisions of the statute, it does so by substituting the claimant to the rights of the contractor, enforcible, as stated, against any and all sums which may be due from the owner at the time of notice given or which are subsequently earned under the terms and stipulations of the contract. In well-considered cases it is said to amount to an assignment *pro tanto* of the amount due or to become due from the owner to the principal contractor, and this regardless of the state of the account between the principal contractor and the subcontractor, who may be the debtor of the claimant."

And again, when quoting from *Vogel v. Luotwieler,* 130 N. Y., 190: "The respondent makes the further point that it does not appear that the contractor is indebted to the subcontractor, Poppet, for the work and labor and material furnished in painting the house, and for that reason the appellant did not establish a valid lien on the premises. We cannot assume that Poppet has been paid, and until the contrary appears, it may be presumed that he has not been, as a liability once

created is supposed to continue until it is shown that it has been discharged. But if it appeared that Poppet had been paid for the work and labor which he performed, the right of the appellant to place a lien upon the premises as a security for his debt was not thereby extinguished, for the right was secured to him by statute, and its validity is not made to depend upon the question whether his vendee had been paid by the party with whom the latter contracted to do the work and labor. Such a construction placed upon the statute would contravene and defeat its express objects and purposes, and so far as it was intended as a protection for materialmen and laborers it would enable the contractor and subcontractor, by concert of action, to deprive them of the benefits of the statute."

The same was held in *Powell v. Lumber Co.,* 168 N. C., 632, the legal purport of that case being that where the furnisher of material to a subcontractor has notified the owner of the building or other structure upon which the work is being done and perfected his lien, as required by the statute, and it appears in an action to enforce the lien that the owner is still indebted to the principal contractor in a sufficient sum to pay the amount due for the materials which, as here, have been used in the work of construction, the same is applicable to the payment of the claimant's demand to the extent necessary for that purpose, regardless of the state of accounts between the contractor and the subcontractor, citing *Brick Co. v. Pulley, supra.*

Any injustice in disregarding the state of the account between the contractor and the subcontractor is more apparent than real, if there is any at all, for the contractor can protect himself by the exercise of proper care and diligence. The idea is that the materials have benefited the property upon which they were used—here that part of the railroad allotted to the subcontractor—and it is nothing but right that the materialman should be compensated. The railroad company is not harmed because it only pays out what it justly owes.

The court should have given judgment for the full amount of plaintiff's claim, and it will be corrected in this respect.

Error.