PARNELL-MARTIN SUPPLY CO., INC., A CORPORATION v. HIGH POINT MOTOR LODGE, INC., OWNER (AND CONTRACTING PARTY FOR IMPROVEMENTS), TALTON CONSTRUCTION COMPANY, INC., CONTRACTOR, AND E. R. WOOLARD, D/B/A QUALITY PLUMBING AND HEATING COMPANY, SUBCONTRACTOR

No. 24

(Filed 18 November 1970)

1. Laborers' and Materialmen's Liens § 3— enforcement of lien — burden of proof

One who has furnished materials used in the construction of a building under contract with a subcontractor may recover pursuant to G.S. Chapter 44 when he proves (1) that materials were furnished to someone having contractual relations to the work, (2) a balance due him, (3) notice to the owner as required by statute prior to payment of the contract price by the owner to the principal contractor, and (4) a balance due the contractor.

2. Laborers' and Materialmen's Liens § 3— unexpended contract price — duty of owner

The law requires the owner to apply the unexpended contract price due the contractor toward payment of the claims of subcontractors and materialmen who have given the required notice.

Supply Co. v. Motor Lodge

3. **Banks and Banking § 10; Bills and Notes § 11— stopping payment of check — right of drawer**

As between the drawer of a check and the drawee bank, the drawer has authority to countermand or order the drawee bank to stop payment on the check at any time before the drawee bank has paid the check.

4. **Payment § 1— delivery and acceptance of check**

In the absence of an agreement to the contrary, delivery of a check by a debtor to a creditor and acceptance of the check by the creditor does not constitute payment until the check is paid by the drawee bank, but if the check is paid upon presentation, the payment is deemed to have been made at the time the check was given.

5. **Statutes § 5— construction of statute — legislative intent**

The intent of the Legislature controls the interpretation of a statute, and where the words of the statute have not acquired a technical meaning, they are ordinarily construed according to their common and ordinary meaning.

6. **Laborers' and Materialmen's Liens §§ 3, 8— action against owner — notice of lien given after check given for final payment — no duty to stop payment**

Where statutory notice of a materialman's claim of lien for materials furnished to a subcontractor was delivered to the owner after the owner had given a check to the principal contractor in final payment of the contract price but prior to payment of the check by the drawee bank, the owner was under no legal duty to stop payment on the check given the contractor, and judgment of nonsuit was properly entered in the materialman's action against the owner to enforce a lien for the materials furnished.

7. **Laborers' and Materialmen's Liens § 3— failure of contractor to notify owner of claim — nonliability of owner**

G.S. 44-8 and G.S. 44-12 create no liability on the part of the owner when a contractor fails to furnish to the owner an itemized statement of sums due materialmen as required by G.S. 44-8.

8. **Laborers' and Materialmen's Liens § 4; Evidence § 4— stipulation that notice was mailed — time of receipt — presumption**

While a stipulation that a notice of a claim of lien was mailed by regular mail to a contractor at a specified address establishes *prima facie* that the notice was received by the contractor in the regular course of the mail, no presumption as to time of receipt of the notice arises absent proof of (1) where and when it was mailed, and (2) the frequency or usual course and time of the mails between the mailing place and place of purported receipt of the letter.

9. **Laborers' and Materialmen's Liens § 8— action against principal contractor — failure to give notice of materialman's claim to owner — sufficiency of evidence**

In an action by a materialman against the principal contractor based on the alleged failure of the principal contractor to notify the owner of sums due plaintiff for materials furnished to a subcon-

tractor before accepting payment from the owner in violation of G.S. 44-8, plaintiff's evidence was insufficient for the jury where it failed to show that the contractor possessed information sufficient to enable him to furnish an itemized statement of plaintiff's claim to the owner in time to deliver timely notice to the owner.

10. **Laborers' and Materialmen's Liens § 3— materials furnished subcontractor — duty of contractor to seek information**

G.S. 44-8 did not impose a duty upon the principal contractor to seek out information that was in the hands of plaintiff materialman concerning materials furnished a subcontractor by the materialman, who could have protected his interests by compliance with G.S. 44-9.

11. **Laborers' and Materialmen's Liens § 8; Trial § 3— materials furnished to subcontractor — action against owner, contractor, subcontractor — continuance as to. subcontractor — prejudice to materialman**

In this action against a motel owner, the principal contractor and a subcontractor to recover for materials furnished by plaintiff to the subcontractor for use in construction of the motel, plaintiff was not prejudiced by continuance of the case as to the subcontractor, since plaintiff was not prevented from using the subcontractor as a witness to prove any competent matter.

12. **Appeal and Error § 41— judgment and affidavit not before Court of Appeals — consideration by Supreme Court**

Judgment and affidavit which were not before. the Court of Appeals but which were included in plaintiff's petition for *certiorari* to review the decision of that Court are not properly before the Supreme Court for consideration.

ON writ of *certiorari* to North Carolina Court of Appeals to review its decision (7 N.C. App. 701) affirming judgment of involuntary nonsuit as to defendant High Point Motor Lodge, Inc., and Talton Construction Company, Inc. The action was continued over plaintiff's objection as to defendant E. R. Woolard, d/b/a Quality Plumbing and Heating Company.

Plaintiff instituted this civil action against High Point Motor Lodge, Inc. (hereinafter called owner), Talton Construction Company, Inc. (hereinafter called contractor), and E. R. Woolard, d/b/a Quality Plumbing & Heating Company (hereinafter called subcontractor).

Plaintiff offered evidence which tended to show that owner entered into a contract with contractor to construct certain motel units. Contractor subcontracted the plumbing, heating and air conditioning to subcontractor Woolard. Plaintiff furnished materials which were used by subcontractor in performing his subcontract obligation with contractor. The materials furnished were charged solely to subcontractor on an

open account, and were not furnished pursuant to an entire contract. Subcontractor failed to pay plaintiff the sum of $3,737.65 due on the account for materials furnished and used on owner's property.

On 1 September 1966 contractor sent to owner a bill and "final certificate" which included a statement that there were no parties remaining to be paid and no liens outstanding. On 7 October 1966 plaintiff sent a letter to contractor advising him that subcontractor owed him $3,737.65 for materials used on owner's property. The letter did not itemize the account due. On 10 October 1966, plaintiff, through its agent, made verbal demand upon contractor for payment of this sum, and contractor refused to pay any part of the sum demanded. Contractor had paid subcontractor in full when this demand was made. Pursuant to the bill and "final certificate" mentioned above, owner, on 14 October 1966 paid contractor by check the sum of $23,120.17, which represented the balance due on the general contract. This check was deposited in contractor's bank account on 17 October 1966. On 18 October 1966 plaintiff sent a notice of claim of lien in form required by statute to Henderson Belk, President of owner, by letter mailed in Charlotte to the Charlotte address of Henderson Belk. On the same date, plaintiff mailed notices of claim of lien in form required by statute to contractor at Grifton, North Carolina, and to subcontractor at Grifton, North Carolina. There was evidence tending to show that Henderson Belk was in Germany for two weeks around the time when the letter was mailed, and that upon his return to Charlotte he turned the notice of lien over to his attorney. The record does not clearly disclose the whereabouts of Belk when the letter was mailed or received. On 21 October 1966 the drawee bank paid the owner's check for $23,120.17.

At the close of plaintiff's evidence the trial judge granted motions for nonsuit lodged by owner and contractor. Plaintiff appealed to North Carolina Court of Appeals, and that Court affirmed the action of the trial judge. This Court granted plaintiff's petition for writ of *certiorari* to North Carolina Court of Appeals to review its decision on 24 June 1970.

*Newitt & Newitt for plaintiff.*

*Sanders, Walker & London and Wallace, Langley & Barwick by James D. Llewellyn, for defendants Talton Construction Co. and High Point Motor Lodge, Inc.*

BRANCH, Justice.

**[1, 2]** One who has furnished materials used in the construction of a building under contract with a subcontractor may recover pursuant to Chapter 44 of the General Statutes when he proves (1) that materials were furnished to someone having contractual relations to the work, (2) a balance due him, (3) notice to the owner as required by statute *prior to payment of the contract price by the owner to the principal contractor,* (4) a balance due the contractor. The law requires the owner to apply the *unexpended* contract price due the contractor towards payment of the claims of subcontractors and materialmen who have given the required notice. *Oldham & Worth v. Bratton,* 263 N.C. 307, 139 S.E. 2d 653; *Powder Co. v. Denton,* 176 N.C. 426, 97 S.E. 372; *Brick Co. v. Pulley,* 168 N.C. 371, 84 S.E. 513. The notice to the owner may be given in two ways: (1) The principal contractor is required by statute before receiving any part of the contract price to furnish owner with "itemized statement of the amount owing to any laborer, mechanic or artisan employed by such contractor, architect or other person, or to any person for materials furnished, . . . ." G.S. 44-8 and G.S. 44-12. (2) The subcontractor or materialmen having contractual relations with the work may give notice to the owner of the amount due, which notice shall be in the form of an itemized statement unless the contract is entire and for a gross sum. G.S. 44-9.

In instant case contractor did not give notice to owner pursuant to G.S. 44-8. Thus if required notice was received, it must have been received from plaintiff pursuant to provisions of G.S. 44-9.

**[3, 4]** It is well recognized that, as between owner and drawee bank, owner had authority to countermand or order the drawee bank to stop payment on the check at any time before drawee bank paid the check. *Bank v. Bank,* 118 N.C. 783, 24 S.E. 524; 10 Am. Jur. 2d, Banks, § 641. It is equally well recognized in this jurisdiction that in the absence of an agreement to the contrary, delivery of a check by a debtor to a creditor and acceptance of the check by the creditor does not constitute payment until the check is paid by the drawee bank, but if the check is paid upon presentation, the payment is deemed to have been made at the time the check was given. *Paris v. Builders Corp.,* 244 N.C. 35, 92 S.E. 2d 405, and cases cited.

The last stated rule is ordinarily applied in debtor-creditor relationships. The courts have applied the rule in determining whether payment by check of an insurance premium was timely made, *Cauley v. Ins. Co.*, 219 N.C. 398, 14 S.E. 2d 39; whether notice was duly given in workmen's compensation cases when notice of greater claim was required within one year from payment by employee, *Paris v. Builders Corp., supra;* and whether taxes were paid before required date, *Tonnar v. Wade,* 153 Miss. 722, 121 So. 156. However, standing alone, the above rules do not control the question of owner's duty to stop payment. Indeed, our research fails to reveal a case which is in point on this novel question, and we therefore look to analogous relationships for guidance.

[6]    Conceding, *arguendo,* that the statutory notice was delivered to owner prior to payment of the check by drawee bank, we must decide whether it was incumbent upon owner to stop payment on the check when check was delivered to contractor prior to receipt of statutory notice by owner.

The statutory remedy of garnishment, recognized in many jurisdictions, creates rights and duties which are strikingly similar to those Chapter 44 of the General Statutes creates between subcontractors, owners of property, and claimants. In the usual garnishment proceeding the plaintiff seeks satisfaction of the indebtedness out of property or credits of his debtor in the possession of or owing by a third person. 6 Am. Jur. 2d, Attachments and Garnishment, § 2, at p. 561. The statutory rights conferred by Chapter 44 of General Statutes permit the plaintiff, upon giving required statutory notice, to seek satisfaction of indebtedness due him from the subcontractor from funds retained by owner and due on contract price. Analogy is further enhanced by the fact that if either the garnishee or owner pays his creditor (the principal defendant or the general contractor) after receiving proper notification of the garnishment proceeding or claim of lien, he is personally liable. *Hart v. Veneer Co.*, 287 Ill. App. 89, 4 N.E. 2d 499.

We find, in the framework of garnishment proceedings, that the courts have ruled on the duty of the garnishee to stop payment on a check when he is served with process after he had delivered the check to his creditor in final payment.

In the case of *Hart v. Veneer Co., supra,* the plaintiff served garnishment process upon garnishee two days after he had given a check to the principal debtor. The service was made

several days before the check was paid by the drawee bank. The garnishee, as an affirmative defense, asserted that he owed the defendant nothing because of delivery of the check given in final payment. The plaintiff contended that garnishee had a duty to stop payment on the check. The Illinois garnishment statute required the garnishee, after being properly served with notice of garnishment proceedings, "to thereafter hold any property, effects, choses in action or credits in their possession or power belonging to the defendant which are not exempt, subject to the court's order." The court, holding that the statute did not impose a duty to stop payment, said:

> "In Waples on Attachments and Garnishments, the author says (section 364) : 'One is not liable to garnishment if he has paid what he owed the defendant in attachment by a bank check, though the latter may not have presented the check to the bank and drawn the money prior to the service of the process of garnishment upon the drawer of the check. It is true that the funds in the bank are still under his control, so that he might stop payment of the check; and, so far as the bank is concerned, he has the right to control the deposit; but he has no moral right to do so, considering his relation to the payee who has taken the check in payment or earnest of payment. At all events, the drawer as garnishee, is not under the slightest obligation to countermand his own check for the purpose of enabling a professed creditor of the payee to attach the credit in his hands and suspend settlement of his account with the payee for an indefinite time.' "

Accord: *Universal Supply Co. v. Hildreth,* 287 Mass. 538, 192 N.E. 23, 94 A.L.R. 1389, and cases cited; *Prewitt v. Brown,* 101 Mo. App. 254, 73 S.W. 897.

In 6 Am. Jur. 2d, Attachment and Garnishment, § 517, p. 928, we find the following:

> "Duty of garnishee to stop payment or delivery of check for indebtedness.—The drawer of a check is under no duty or obligation to stop payment, when garnished, for the benefit of the garnishing plaintiff. However, it has been held that where the check is still within the control of the drawer at the time of the service of the writ upon him, it is his duty to withhold delivery or to exercise reasonable diligence to stop its delivery. And where the check has not been delivered at the time of the service of the

summons upon the drawer, it is revocable, and the debt is still owing and subject to garnishment."

See also 38 C.J.S., Garnishment, § 96, pp. 304-305.

G.S. 44-8, in part, states:

"When any contractor, architect or other person makes a contract for building, altering or repairing any building or vessel, or for the construction or repair of a railroad, with the owner thereof, it is his duty to furnish to the owner or his agent, before receiving any part of the contract price, as it may become due, an itemized statement of the amount owing to any laborer, mechanic or artisan employed by such contractor, architect or other person, or to any person for materials furnished, and upon delivery to the owner or his agent of the itemized statement aforesaid, it is the duty of the owner to *retain* from the money then due the contractor a sum not exceeding the price contracted for, which will be sufficient to pay such laborer, artisan or mechanic for labor done, or such person for material furnished, . . . ." (Emphasis ours.)

G.S. 44-9, which provides that the subcontractor, materialmen . . . or persons furnishing materials, may give statutory notice to the owner, states *inter alia:*

". . . Upon the delivery of the notice to the owner, agent, or lessee, the claimant is entitled to all the liens and benefits conferred by law in as full a manner as though the statement were furnished by the contractor. If the said owner, agent or lessee refuses or neglects to *retain*, out of the amount due the contractor under the contract, a sum not exceeding the price contracted for which will be sufficient to pay such claimant, then the claimant may proceed to enforce his lien. . . ." (Emphasis ours.)

Ballentine's Law Dictionary defines "retain" as follows: "To retain means to continue to hold; to keep in possession."

[5] The rights of the parties to this action are statutory, and when a statute is interpreted, the intent of the Legislature controls, *Highway Commission v. Hemphill*, 269 N.C. 535, 153 S.E. 2d 22, and where the words of the statute have not acquired a technical meaning, they are ordinarily construed according to their common and ordinary meaning. *Greensboro v. Smith*, 241 N.C. 363, 85 S.E. 2d 292.

Here, owner, in lieu of cash, gave a check to contractor in payment of the contract price. When the check was given there arose an understanding that contractor would get cash, or its equivalent, when he presented the check for payment. A stop-payment order would have breached the implied promise to pay and would have suspended settlement of a recognized debt for services rendered for an indefinite length of time.

[6] Applying the above rules and reasoning, we conclude that owner (High Point Motor Lodge, Inc.) was under no legal duty to stop payment on the check. Plaintiff's evidence affirmatively shows that at the time notice was given owner had not breached his duty, in the language of the statute, "to retain from the money then due the contractor a sum . . . sufficient to pay . . . such person for material furnished." The Court of Appeals correctly decided that nonsuit was properly granted as to this cause of action.

By a second cause of action plaintiff seeks recovery of damages for the entire amount due it because of failure of contractor to comply with G.S. 44-8 and G.S. 44-12.

G.S. 44-8, which in pertinent part is hereinabove quoted, requires the contractor to furnish to owner an *itemized* statement of amounts due by him to any laborer, mechanic or artisan employed by such contractor, architect or other person, or to any person for materials furnished. Violation of this statute by the contractor is made a misdemeanor by G.S. 44-12.

[7] Since G.S. 44-8 and G.S. 44-12 are directed against the contractor and not the owner, they create no liability on the part of the owner when contractor fails to give the required notice. *Oldham & Worth, Inc. v. Bratton, supra; Pinkston v. Young,* 104 N.C. 102, 10 S.E. 133. Clearly nonsuit was properly entered as to owner as to the second cause of action.

Assuming, without deciding, that a cause of action does accrue to plaintiff against contractor by reason of G.S. 44-8, there are sufficient reasons why nonsuit as to contractor was properly entered.

[8, 9] A review of the record reveals that contractor could not have possessed information sufficient to enable him to furnish an itemized statement unless he had received the information from the notice of claim of lien mailed on 18 October 1966. It was stipulated that this notice was mailed by regular mail

to contractor at Grifton, North Carolina. The stipulation established *prima facie* that the notice was received by contractor in regular course of mail. *Trust Co. v. Bank,* 166 N.C. 112, 81 S.E. 1074; *Bragaw v. Supreme Lodge,* 124 N.C. 154, 32 S.E. 544. However, no presumption as to *time* of receipt of the notice arose absent proof of (1) where and when it was mailed, and (2) frequency or usual course and time of the mails between the mailing place and place of purported receipt of letter. 29 Am. Jur. 2d, Evidence, § 197, p. 250. Plaintiff offered no evidence as to the latter requirement. In fact, plaintiff offered no evidence of any kind tending to show that contractor had received the itemized notice in time to deliver timely notice to owner.

[10]   It must be borne in mind that there was no privity between contractor and plaintiff, and that contractor had fully paid subcontractor. We do not interpret G.S. 44-8 to impose a duty owed by the contractor to this plaintiff to seek out information that was in the hands of plaintiff, who could have protected his interests by complying with the provisions of G.S. 44-9. Thus plaintiff's evidence fails to show a violation by contractor of the provisions of G.S. 44-8 and G.S. 44-12.

Decision in this case does not require that we decide whether a cause of action against contractor for money damages could arise because of contractor's failure to comply with the provisions of G.S. 44-8.

The nonsuit as to contractor on the second cause of action was properly allowed.

[11]   Plaintiff, without citation of authority, contends that continuance of the case as to subcontractor resulted in error prejudicial to plaintiff. The continuance of the case did not prevent the use of subcontractor as a witness to prove any competent matter. We are aware of the holding of this Court in the line of cases represented by *Lumber Co. v. Hotel Co.,* 109 N.C. 658, 14 S.E. 35, and those found in 100 A.L.R. 128, at 134. However, factual differences distinguish these cases from instant case.

[12]   Plaintiff included in his petition for *certiorari* copy of a judgment filed against subcontractor on 1 June 1970 and an affidavit of insolvency executed by subcontractor on 2 June 1970. The opinion of the Court of Appeals was filed on *6 May 1970.* Obviously, the judgment and affidavit were not before

the Court of Appeals and are not properly before us for consideration. *Byrd v. Bazemore,* 122 N.C. 115, 28 S.E. 965; *Presnell v. Garrison,* 122 N.C. 595, 29 S.E. 839.

For the reasons stated, the decision of the Court of Appeals is

Affirmed.