317 So.2d 43 (1975)
CORRUGATED INDUSTRIES, INC.
v.
CHATTANOOGA GLASS COMPANY et al.
No. 48104.
Supreme Court of Mississippi.
July 7, 1975.
Rushing & Guice, William Lee Guice, III, Biloxi, for appellant.
White & Morse, William M. Rainey, Gulfport, for appellees.
Before PATTERSON, SMITH and BROOM, JJ.
*44 SMITH, Justice.
The action, out of which this appeal arises, was brought in the County Court of Harrison County by Corrugated Industries, as plaintiff, against Chattanooga Glass Company, as owner, and John E. Shavers, as contractor, under Mississippi Code Annotated section 85-7-181 (1972). The suit sought to bind in the hands of Chattanooga Glass the sum of $6,684.48, alleged to be due Corrugated Industries by Shavers for material furnished to him by it and alleged to have been used for the repair of the Chattanooga Glass Company building, it being further alleged that notice of Shavers' debt had been given Chattanooga Glass at a time when it had in its hands funds owed Shavers.
Section 87-7-181, supra, provides in part:
When any contractor ... shall not pay any person who may have furnished materials used in the ... repair of any house, building, ... such person . .. may give notice in writing to the owner ... and, thereupon the amount that may be due upon the date of the service of such notice by such owner to the contractor ... shall be bound in the hands of such owner... .
The material facts of the case are not in dispute. Chattanooga Glass contracted with Shavers to repair the roof of its building for a total contract sum of $22,257.60.
Work under the contract having proceeded, Chattanooga Glass issued its check to Shavers for $10,500.00 as a progress payment upon the contract sum.
On May 2, 1972, the work having been completed, Chattanooga Glass issued its check to Shavers for $11,757.60, in payment of the final balance owing to Shavers under the contract.
On May 10, 1972, the check so issued to Shavers was cashed or negotiated by the First Mississippi National Bank, Biloxi.
On May 11, 1972, the check was cleared by Whitney Bank, New Orleans, Louisiana, a correspondent bank.
On May 11, 1972, the Gulfport office of Chattanooga Glass received a stop payment notice from Corrugated Industries, claiming that Shavers owed for material which had gone into the job.
On May 15, 1972, the check cleared American National Bank and Trust Company, Chattanooga, Tennessee, the bank on which it was drawn.
It appears incidentally that on May 26, 1972, Corrugated Industries received Shavers' check in payment for all amounts due it but that on June 5, 1972, Shavers' check proved to be "no good."
In the county court the case was submitted to a jury which returned a verdict for Corrugated Industries in the amount sued for against both Chattanooga Glass and Shavers. On motion, however, the judgment was set aside and judgment non obstante veredicto entered for Chattanooga Glass Company. The verdict against Shavers remains in full force and effect.
The Circuit Court of Harrison County affirmed that judgment and Corrugated Industries now appeals here.
It appears to be conceded that the issue presented by the present appeal is whether Chattanooga Glass, as owner, owed Corrugated Industries, as a materialman, the affirmative duty to stop payment on its check issued to Shavers, in final settlement with him under the contract, the check having been issued, delivered and negotiated prior to the receipt of any stop notice from Corrugated Industries. The check, issued on May 2, 1972, was duly honored upon presentment in due course by the payor bank in Chattanooga.
Only one case has been cited, and no other has been found, where this precise question has been dealt with by a court of last resort. The Supreme Court of North *45 Carolina in Parnell-Martin Supply Co. v. High Point Motor Lodge, Inc., 277 N.C. 312, 177 S.E.2d 392 (1970), passed upon a case which involved an almost exactly similar factual situation. North Carolina has a statute analogous to section 85-7-181, supra, designed like the Mississippi statute, to protect laborers and materialmen by providing a means of binding undisbursed funds due a contractor which remain in the hands of an owner. In Parnell-Martin, supra, the North Carolina Supreme Court set out the following chronology of events:
September 1, 1966 contractor submitted final bill to owner;
October 14, 1966 owner delivered its check to the contractor in payment of balance due on contract;
October 17, 1966 the check was negotiated by contractor;
October 18, 1966 materialman sent notice;
October 21, 1966 payor bank cleared owner's check.
The North Carolina Supreme Court prefaced its conclusion that the owner was under no duty to stop payment of its check, by stating:
It is well recognized that, as between owner and drawee bank, owner had authority to countermand or order the drawee bank to stop payment on the check at any time before drawee bank paid the check. Bank v. Bank, 118 N.C. 783, 24 S.E. 524; 10 Am.Jur.2d, Banks, § 641. It is equally well recognized in this jurisdiction that in the absence of an agreement to the contrary, delivery of a check by a debtor to a creditor and acceptance of the check by the creditor does not constitute payment until the check is paid by the drawee bank, but if the check is paid upon presentation, the payment is deemed to have been made at the time the check was given. Paris v. Builders Corp., 244 N.C. 35, 92 S.E.2d 405, and cases cited.
(277 N.C. at 316-317, 177 S.E.2d at 394).
In Tonnar v. Wade, 153 Miss. 722, 121 So. 156 (1929), the question before the Court was whether a defendant in an election suit was a qualified elector. To be a qualified elector the law required that he pay his taxes on or before February 1 of the election year. The taxes had been paid by check on February 1 and a receipt issued by the tax collector. The check did not clear the bank on which it was drawn until February 9. The Court found that, nevertheless, the defendant was a duly qualified elector, saying:
The general rule is that a check becomes absolute payment of a debt when the check is paid on presentation, and, on such payment, the debt is deemed to have been discharged from the date the check was given... . By the giving of a check, the tax obligation and the tax lien are both conditionally discharged, the condition being the payment of the check, and, when the check is paid, a discharge of both the tax obligation and the tax lien relates back to the date of the check.
(153 Miss. at 732, 121 So. at 158).
In Parnell-Martin, the North Carolina Court drew an analogy between the obligation of an owner to a materialman under circumstances such as those involved and that of a garnishee-defendant, quoting with approval an Illinois decision wherein the Illinois Court stated:
In Waples on Attachments and Garnishments, the author says (section 364): "One is not liable to garnishment if he has paid what he owed the defendant in attachment by a bank check, though the latter may not have presented the check to the bank and drawn the money prior to the service of the process of garnishment upon the drawer of the check. It is true that the funds in the bank are *46 still under his control, so that he might stop payment of the check; and, so far as the bank is concerned, he has the right to control the deposit; but he has no moral right to do so, considering his relation to the payee who has taken the check in payment or earnest of payment. At all events, the drawer, as garnishee, is not under the slightest obligation to countermand his own check for the purpose of enabling a professed creditor of the payee to attach the credit in his hands and suspend settlement of his account with the payee for an indefinite time." [Hart v. Veneer Co., 287 Ill. App. 89, 4 N.E.2d 499 (1936)].
(277 N.C. at 318, 177 S.E.2d at 395).
In Parnell-Martin, supra, the North Carolina Court observed:
Conceding, arguendo, that the statutory notice was delivered to owner prior to payment of the check by drawee bank we must decide whether it was incumbent upon owner to stop payment on the check when check was delivered to contractor prior to receipt of statutory notice by owner.
The statutory remedy of garnishment, recognized in many jurisdictions, creates rights and duties which are strikingly similar to those Chapter 44 of the General Statutes creates between subcontractors, owners of property, and claimants. In the usual garnishment proceeding the plaintiff seeks satisfaction of the indebtedness out of property or credits of his debtor in the possession of or owing by a third person... .
......
In 6 Am.Jur.2d, Attachment and Garnishment, § 517, p. 928, we find the following:
"Duty of garnishee to stop payment or delivery of check for indebtedness.  The drawer of a check is under no duty or obligation to stop payment, when garnished, for the benefit of the garnishing plaintiff. However, it has been held that where the check is still within the control of the drawer at the time of the service of the writ upon him, it is his duty to withhold delivery or to exercise reasonable diligence to stop its delivery. And where the check has not been delivered at the time of the service of the summons upon the drawer, it is revocable, and the debt is still owing and subject to garnishment." See also 38 C.J.S. Garnishment § 96, pp. 304-305.
The North Carolina Court concluded:
Applying the above rules and reasoning, we conclude that owner (High Point Motor Lodge, Inc.) was under no legal duty to stop payment on the check. Plaintiff's evidence affirmatively shows that at the time notice was given owner had not breached his duty, in the language of the statute, "to retain from the money then due the contractor a sum ... sufficient to pay ... such person for material furnished." The Court of Appeals correctly decided that nonsuit was properly granted as to this cause of action.
(277 N.C. at 317-320, 177 S.E.2d at 395-397).
This Court has never dealt with this precise factual situation, but Chancellor v. Melvin, 211 Miss. 590, 52 So.2d 360 (1951), presented a case in which the owner, in an owner-contractor relationship, had paid his contractor with a promissory note. Subsequently, stop notices from several unpaid materialmen were received by the owner, after delivery of the note but prior to the due date of the note. This Court held that under such circumstances the owner had not been indebted to the contractor at the time he had received the stop notices, saying:
In the absence of a statutory provision to the contrary, the owner may make payment to his principal contractor in *47 any method and at any time they agree upon. Rockel, Mechanics' Liens (1909), Sec. 67; 57 C.J.S., Mechanics' Liens, § 251. There are numerous cases in which the owner was held to have paid his contractor by giving him in good faith a promissory note for the amount due on the contract, even though the note was not paid until after stop notices had been given to the owner... .
(211 Miss. at 602, 52 So.2d at 366).
As stated by the North Carolina Court in Parnell-Martin, supra, while a debt is not paid by the giving and acceptance of a check until the check is paid on presentment in due course, authorities cited to that effect are not relevant to the issue in the present case. Such authorities relate to the extinguishment of an existing debt as between the debtor-maker of a check and creditor-acceptor to whom it is given. Of course, in such a case, if the check is no good the debt is not paid.
No privity exists between an owner and those furnishing material independently to his contractor and no obligation to such a materialman on the part of the owner arises until after receipt of notice. Notice given by a materialman to an owner after the owner has, in good faith, made final settlement with his contractor, as he was obligated by his contract to do, by issuing the contractor his check, which the contractor, in good faith, has negotiated, does not undo the settlement or require the owner to stop payment of the check. Deposit of such a check by a contractor and the issuance of checks of his own against the deposit, not only would involve endorsers but laborers, materialmen and other innocent persons might be drawn into expensive and time consuming litigation as a result of inexcusable neglect on the part of the claimant-materialman to give timely notice.
The judgment of the Circuit Court of Harrison County, affirming the judgment entered for Chattanooga Glass Company by the Harrison County Court, non obstante veredicto, is affirmed.
Affirmed.
GILLESPIE, C.J., RODGERS, P.J., and INZER, ROBERTSON, SUGG and WALKER, JJ., concur.