CHANDLER, J.,
for the Court.
¶ 1. Joy Timms filed a complaint in the Chancery Court of Monroe County against Steve Pearson, a general contractor who had performed construction work on Timms’s house. The chancery court found that Pearson had materially breached the construction contract and terminated the contract, but ordered Timms to pay certain outstanding amounts to subcontractors. Timms appeals, arguing that the chancery court erroneously ordered her to pay the subcontractors.[1] We agree, and reverse that portion of the order requiring Timms to pay the subcontractors.
FACTS
¶ 2. Timms’s home in Smithville, Mississippi was partially destroyed by a fire. She contracted with Pearson to repair the fire damage and to add additional square footage to the existing house, including a master bedroom and a double car garage. During negotiations, Pearson submitted several proposals and the parties finally agreed for Pearson to undertake the project. The agreement required Timms to make a payment after the completion of each stage of the construction.
¶ 3. Pearson began work on the house on or about August 23, 2000. Timms inspected the project from time to time. In September, Timms paid Pearson $3,600 for demolition and $12,000 for the foundation. On October 16, 2000, Timms paid Pearson $17,000 for the black-in stage, which included roofing, the application of black *1085 wallboard to the exterior walls, and other tasks. After October 16, the condition of the house caused Timms to become concerned about the quality of Pearson’s work and the timeliness of his progress. Timms asked Pearson to stop work on December 16, 2000. On December 24, 2000, a building inspector cited numerous problems with the condition of the construction project.
¶ 4. Pearson filed a notice of construction lien, an amended notice of construction lien, and a lis pendens notice regarding funds owed for materials and services used in the project. Timms filed a complaint against Pearson requesting cancellation of the construction contract and the return of a set of house plans. Pearson filed an answer and counterclaim for the amount he claimed that Timms owed for materials and services rendered. Pearson submitted that the amount owed was $14,609.89.
¶ 5. After a hearing, the chancellor found that a proposal dated August 10, 2000, that was signed by both parties constituted the final agreement of the parties. That agreement provided that the price for the construction was $68,420, and that construction was to be completed within 90 days. The chancellor found that Pearson had failed to complete the project within 120 days and Pearson admitted that it would take at least an additional thirty days to complete. The court also found that the quality of work performed by Pearson did not meet the standards imposed for construction in the Smithville area. The chancellor found that Pearson’s untimely performance and low quality performance constituted material breaches of the construction contract, and that the contract should be terminated. The chancellor cited testimony that the cost to repair the defects and finish the project was $89,064.63, plus $1,800 to complete the heating and air conditioning. The court cancelled the notice of construction lien and lis pendens notice which Pearson had filed against Timms’s property.
¶ 6. The court also found that there were four outstanding bills for materials and services that had gone into the construction project and for materials that had been specially ordered and were awaiting pickup at the providers’ places of business. The bills were in the amounts of $4,200 for Fowlkes Plumbing, $2,200 for R & B Services, $2,182.46 for C & D Lumber Company, and $708.70 for Smithville Hardware Co., for a total of $9,291.16. The chancellor found that Timms “should be required” to pay the bills, ordered her to do so, and absolved Pearson of responsibility for the bills. The court denied all other relief requested. On appeal, Timms argues that the chancellor erroneously ordered her to pay the four bills.
LAW AND ANALYSIS
¶ 7. The sole issue on appeal is whether the chancellor erroneously ordered Timms to pay the subcontractors. We may not reverse the decision of the chancellor unless that decision was manifestly wrong, clearly erroneous, or applied an incorrect legal standard. Shirley v. Christian Episcopal Methodist Church, 748 So.2d 672, 674(¶ 9) (Miss.1999). The chancellor found that Timms had paid Pearson a total of $32,600 during the period between the commencement of the project and Timms’s request that Pearson cease work. Notably, the chancellor made no finding as to what amount of money, if any, that Timms actually owed Pearson for the work he had performed. The chancellor’s order for Timms to pay the subcontractors’ bills was based solely upon the finding that the bills remained unpaid.
¶ 8. At common law, subcontractors are common creditors of the contractor for *1086 whom they agree to provide materials or services. Jones Supply Co. v. Ishee, 249 Miss. 515, 527, 163 So.2d 470, 475 (1964). No privity exists between a subcontractor and an owner. Corrugated Indus., Inc. v. Chattanooga Glass Co., 317 So.2d 43, 47 (Miss.1975). But Mississippi Code Annotated section 85-7-181 (Rev.1999) prescribes a remedy against the owner for a subcontractor “who may have furnished materials used in the erection, construction, alteration, or repair of any house” and who is not paid by the contractor. To exercise the remedy, the unpaid subcontractor must serve written notice of the debt upon the property owner, at which point “the amount that may be due upon the date of the service of such notice by such owner to the contractor or master workman, shall be bound in the hands of such owner for the payment in full, or if insufficient then pro rata, of all sums due such person.... ” Miss.Code Ann. § 85-7-181 (Rev.1999). In other words, when the unpaid subcontractor gives written notice (commonly termed a “stop notice”) to the owner, the subcontractor becomes entitled to payment from the owner up to the amount in which the owner is indebted to the general contractor as of the date the notice is served. Id.
¶ 9. The service of the stop notice invokes the subcontractor’s statutory remedy against the owner. Id. Absent such notice, an owner has no obligation to a subcontractor who has provided materials or services pursuant to an agreement with a contractor. Corrugated Indus. Inc., 317 So.2d at 47. And, if a subcontractor serves a stop notice after the owner has paid the contractor the full amount due under the contract, the owner is not liable to the subcontractor. Id.; Miss.Code Ann. § 85-7-181.
¶ 10. In the present case, Pearson submitted four receipts for materials and services from Fowlkes Plumbing, R & B Services, C & D Lumber Company, and Smithville Hardware Co. The chancellor referenced the four suppliers as subcontractors and did not make any finding that the suppliers had any contractual relationship with Timms. That the four suppliers were subcontractors is supported by the evidence; all four suppliers’ bills show either Steve Pearson or Pearson Construction as the sole purchaser. See Engle Acoustic & Tile, Inc. v. Grenfell, 223 So.2d 613, 618 (Miss.1969).
¶ 11. It appears from the record that none of the four subcontractors ever served Timms with a stop notice pursuant to § 85-7-181. It is clear that, even had the subcontractors sued Timms, they would have been unable to recover due to their failure to fulfill the statutory prerequisite of serving a stop notice. Corrugated Indus., 317 So.2d at 47. As the four subcontractors never availed themselves of their statutory right of recovery, they stand as general creditors of Pearson and have no remedy against Timms. Id. Because the subcontractors, having slept on their rights, could not have recovered from Timms had they brought suit themselves, it was error for the chancellor to award them recovery in a suit brought by the general contractor, notwithstanding that the subcontractors were not parties in this case.
¶ 12. Because we may affirm a chancellor’s decision that reached the right result but for the wrong reason, it may be argued that the correct appellate resolution of this matter would be to consider the chancellor’s order for Timms to pay $9,291.16 as a finding that Timms remained indebted to Pearson in that amount for the work he had performed. Thus, we might reverse and render a decision awarding $9,291.16 directly to Pear *1087 son. We are unable to reach that result. The chancellor ordered Timms to pay the $9,291.16 on the sole ground that the bills remained outstanding. The chancellor never expressly found what amount, if any, Timms owed Pearson for the work he had performed. See Ladner v. Manuel, 744 So.2d 390, 393-94 (¶ 12-14) (Miss.Ct.App.1999) (discussing the right of a breaching contractor to recover for work performed prior to the breach). It was uncontradict-ed that Timms had already paid Pearson $32,600, and the testimony of Timms, Pearson and other witnesses conflicted as to whether or not that amount fully compensated Pearson for the work he had performed on Timms’s property. On this record, an order for Timms to pay Pearson the amount of the subcontractors’ outstanding bills might result in double or over payment by Timms for the subcontractors’ work.
¶ 13. We reverse that part of the decision of the chancery court ordering Timms to pay the four subcontractors. As the other portions of the chancellor’s decision were not appealed, those portions remain undisturbed by this judgment.
¶ 14. THE JUDGMENT OF THE CHANCERY COURT OF MONROE COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS AND GRIFFIS, JJ„ CONCUR.

. Through informal means, it has come to the attention of this Court that Pearson died after this appeal was perfected. Nonetheless, we review the merits of this appeal because the procedures for substitution of a party under Mississippi Rule of Appellate Procedure 43(a) have not been invoked and Pearson’s death does not foreclose our ability to grant the relief requested.